UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YASMINE MELEHY, Personal Representative )<br>for the Estate of Abdel Shakour Shaalan,   )<br>201 I STREET, SW #V335   )<br>WASHINGTON, DC 20024   )<br>   )<br>      Plaintiffs,   )<br>   )<br>v.   )<br>   )<br>HALA SALHA,   )<br>11031 CEDARWOOD DRIVE   )<br>ROCKVILLE, MD 20852   )<br>   )<br>and   )<br>   )<br>CAPITAL ONE FINANCIAL CORPORATION, )<br>1680 CAPITAL ONE DRIVE SOUTH   )<br>MCLEAN, VA 22102   )<br>c/o CORPORATE SERVICE COMPANY   )<br>1090 VERMONT AVENUE NW   )<br>WASHINGTON, DC 20005   )<br>   )<br>      Defendants.   ) | Case No.: 1:21-cv-2873<br>JURY TRIAL REQUESTED |

## COMPLAINT

Comes now, Plaintiff Yasmine Melehy Personal Representative for the Estate of Abdel Shakour Shaalan ("Plaintiff"), by counsel, and for its Complaint against the Defendants states as follows:

### NATURE OF CASE

1. This case arises out of Defendants' conspiracy, led by Defendant, Hala Salha, to illegally, surreptitiously, and without authorization or in excess of authorization trespass upon, invade, and misappropriate funds from Plaintiff's Yasmine Melehy Personal Representative for the Estate of Abdel Shakour Shaalan ("Plaintiff") bank accounts for their own gain.

1

## PARTIES

2. Abdel Shakour Shaalan was a resident of the District of Columbia when he passed away on June 4, 2021.

3. Yasmine Melehy qualified as Personal Representative for the Estate of Abdel Shakour Shaalan with the Probate Division of the District of Columbia Superior Court on September 1, 2021.

4. Defendant, Hala Salha, is an individual who resides in the state of Maryland.

5. Upon information and belief, Capital One is a is a nationally recognized bank with its headquarters located at 1680 Capital One Drive, McLean, Virginia 22102.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as there exists complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. The in-person bank activity giving rise to this case occurred almost exclusively within the District of Columbia.

## FACTS

8. Mr. Shaalan was the former representative for the Middle East region on the Executive Board of the International Monetary Fund ["IMF"], a position he held for 22 years until 2014.

9. Mr. Shaalan continued to hold an office at the IMF after retiring until February 2020.

10. Defendant Hala Salha [hereinafter "Salha"] was Plaintiff's former personal assistant at the IMF and served as such for approximately 30 years.

11. Mr. Shaalan's wife, Saida Shaalan, passed away in July 2012.

12. Salha, who already assisted with Mr. Shaalan's business affairs, became increasingly involved in Mr. Shaalan's personal affairs after the death of Saida Shaalan.

13. Mr. Shaalan had a high yield checking account and a savings account with Capital One. In the past, Mr. Shaalan had at least one other account with Capital One.

14. For over a decade Mr. Shaalan routinely conducted banking transactions in person at the same bank branch located at 1700 K Street, NW ["Branch"].

15. Within 2 years of the passing of Saida Shaalan, Salha had arranged for doctors of Salha's choosing to see Mr. Shaalan ["Salha's doctors"].

16. It is not believed that Salha's doctors were trying to do anything other than provide appropriate care for Mr. Shaalan.

17. Mr. Shaalan was of average health for a man of his age at the time of Saida Shaalan's passing.

18. Salha's doctors, at the urging of Salha, began prescribing medication to Mr. Shaalan that impaired his judgment.

19. As Mr. Shaalan's judgment became more impaired, Salha encouraged continuing and adding medications that further impaired Mr. Shaalan's judgment.

20. During the time frame of 2012-2014 it is unclear how severe any mental impairment was, as Salha masked Mr. Shaalan's condition from the public.

21. When Mr. Shaalan later came off the medications prescribed by Salha's doctors in 2020, Mr. Shaalan's cognitive abilities improved.

22. At some point between the death of Saida Shaalan and late 2014, Salha began handling Mr. Shaalan's finances, perhaps even doing so in an appropriate manner at first.

23. Mr. Shaalan had an American Express card ["Amex"] at the time of the passing of Saida Shaalan.

24. Mr. Shaalan had a longstanding habit of making all payments via cash or check.

25. At some point between the death of Saida Shaalan and late 2014 Salha began using the Amex, presumably for the benefit of Mr. Shaalan.

26. In order to do so, Salha had an Amex card issued to her without Mr. Shaalan's permission, was using the card of the late Saida Shaalan, or was using her own American Express Card.

27. At some point in 2014 Salha realized that no one was monitoring the Amex transactions and started using the Amex for her personal benefit.

28. Mr. Shaalan never gave Salha permission to use the AMEX card for personal use.

29. Salha paid the Amex bills from Mr. Shaalan's checking account without his knowledge that she used the card for personal use.

30. In late 2014 Salha realized her position of trust could be exploited for something greater than routine daily purchases.

31. On November 3, 2014, Salha took Mr. Shaalan to the Branch in order to wire $1 million from Mr. Shaalan's savings account to Salha. (Exhibit A).

32. The destination of the wire transfer was an account in Salha's name.

33. With the assistance of Capital One personnel, Salha filled out the wire transfer paperwork.

34. Mr. Shaalan, at the time, was incapable of understanding what was occurring or to consent to it.

35. Had the transaction been for a wire transfer to a relative, to an account held by Mr. Shaalan, or to a title company, Capital One would likely have considered it routine and applied a moderate amount of scrutiny.

36. This type of wire transfer had numerous indicators of fraud, the most severe of which was Salha herself handling the paperwork.

37. One or more employees at Capital One chose to ignore Capital One safeguards in order to benefit Salha.

38. Salha told Mr. Shaalan that the wire transfer was for Mr. Shaalan's benefit or for his family.

39. Mr. Shaalan was under the influence of mind-altering medications on November 3, 2014, when Salha told Plaintiff the money would be used for his benefit.

40. The Branch employees aided Salha in wiring $1 million from Mr. Shaalan's savings account to herself.

41. The $1 million wired from Mr. Shaalan's savings account was not used to benefit Mr. Shaalan.

42. On January 16, 2015, Salha took Plaintiff to the Branch in order to withdraw $1 million in cash from Plaintiff's savings account for Salha's benefit. (Exhibit A).

43. Plaintiff continued to be under the influence of mind-altering medications on January 16, 2015, when Salha told Plaintiff the money would be used for his benefit.

44. Salha had to make prior arrangements with staff at the branch before withdrawing such a large sum of money.

45. The Branch employees aided Salha in withdrawing $1 million in cash from Mr. Shaalan's savings account.

46. The $1 million in cash withdrawn from Mr. Shaalan's savings account was not used to benefit Plaintiff.

47. Also, in January 2015 Salha had Mr. Shaalan transfer $1 million to a separate account in Mr. Shaalan's name.

48. This second transaction was reversed, for reasons not known to Yasmine Melehy.

49. Over the next few years, Salha did not attempt to defraud with transactions of such severe magnitude.

50. From the years 2014 through 2019 Salha regularly wrote checks using Mr. Shaalan's checkbook to herself and instructed Mr. Shaalan to sign them. Salha appears to have signed Mr. Shaalan's name to some checks. Salha also appears to have utilized pre-signed checks. Salha told Mr. Shaalan the cash would be used for his benefit. Each check was drawn at the Branch.

51. From the years 2014 through 2019 Salha regularly wrote checks using Mr. Shaalan's checkbook to third parties and instructed Plaintiff to sign them. Salha told Mr. Shaalan the money would be used for his benefit.

52. Branch employees aided Salha in drawing checks from Mr. Shaalan's checking account to herself.

53. Branch employees allowed some checks to be cashed without necessary parts filled out.

54. Branch employees also used withdrawal slips in amounts not reflected on checks in order to mask withdrawals.

55. Salha arranged for the following fraudulent checks to be signed by Mr. Shaalan and drawn from Mr. Shaalan's checking account for a total of $453,040.96.

| DATE | AMOUNT | CHECK # |
|---|---|---|
| 10/10/2014 | ($31,204.96) | 266 |
| 10/22/2014 | ($3,000.00) | 268 |
| 11/25/2014 | ($3,000.00) | 294 |
| 12/10/2014 | ($3,000.00) | 297 |
| 1/14/2015 | ($3,000.00) | 373 |
| 2/9/2015 | ($3,000.00) | 408 |
| 3/6/2015 | ($3,000.00) | 418 |
| 3/30/2015 | ($3,000.00) | 424 |
| 4/8/2015 | ($5,000.00) | 219 |
| 4/21/2015 | ($3,000.00) | 221 |
| 5/14/2015 | ($3,000.00) | 528 |
| 5/18/2015 | ($3,000.00) | 529 |
| 6/22/2015 | ($3,000.00) | 492 |
| 7/23/2015 | ($3,000.00) | 534 |
| 8/7/2015 | ($5,000.00) | 499 |
| 9/28/2015 | ($3,000.00) | 557 |
| 10/22/2015 | ($3,000.00) | 545 |
| 11/18/2015 | ($3,000.00) | 576 |
| 11/25/2015 | ($3,000.00) | 577 |
| 1/13/2016 | ($3,000.00) | 585 |
| 2/16/2016 | ($3,000.00) | 589 |
| 2/29/2016 | ($3,000.00) | 575 |
| 3/10/2016 | ($3,000.00) | 462 |
| 4/19/2016 | ($8,317.00) | 603 |
| 4/21/2016 | ($24,390.00) | 601 |
| 4/25/2016 | ($3,000.00) | 654 |
| 5/16/2016 | ($3,000.00) | 475 |
| 7/1/2016 | ($3,000.00) | 660 |
| 7/26/2016 | ($3,000.00) | 663 |
| 8/29/2016 | ($3,000.00) | 675 |
| 8/30/2016 | ($3,000.00) | 668 |
| 10/3/2016 | ($3,000.00) | 659 |
| 10/31/2016 | ($3,000.00) | 636 |
| 11/23/2016 | ($3,000.00) | 640 |
| 12/27/2016 | ($3,000.00) | 678 |
| 12/29/2016 | ($5,000.00) | 680 |
| 2/21/2017 | ($3,000.00) | 649 |
| 3/3/2017 | ($3,000.00) | 686 |

| | | |
|---|---|---|
| 3/29/2017 | ($3,000.00) | 698 |
| 4/4/2017 | ($3,000.00) | 699 |
| 4/27/2017 | ($17,661.00) | 729 |
| 5/22/2017 | ($3,000.00) | 805 |
| 6/5/2017 | ($3,000.00) | 830 |
| 6/6/2017 | ($3,000.00) | 855 |
| 6/14/2017 | ($5,000.00) | 835 |
| 6/30/2017 | ($3,000.00) | 859 |
| 8/15/2017 | ($3,000.00) | 818 |
| 8/18/2017 | ($3,000.00) | 863 |
| 8/31/2017 | ($3,000.00) | 810 |
| 9/11/2017 | ($3,000.00) | 870 |
| 9/18/2017 | ($3,000.00) | 873 |
| 10/5/2017 | ($6,000.00) | 823 |
| 10/20/2017 | ($10,000.00) | 824 |
| 10/26/2017 | ($3,000.00) | 881 |
| 11/6/2017 | ($3,000.00) | 884 |
| 11/22/2017 | ($3,000.00) | 885 |
| 12/4/2017 | ($3,000.00) | 888 |
| 12/19/2017 | ($3,000.00) | 892 |
| 12/22/2017 | ($3,000.00) | 876 |
| 2/5/2018 | ($3,000.00) | 909 |
| 3/14/2018 | ($3,000.00) | 954 |
| 3/16/2018 | ($3,000.00) | 931 |
| 4/6/2018 | ($3,000.00) | 957 |
| 4/16/2018 | ($3,400.00) | 953 |
| 4/19/2018 | ($3,000.00) | 958 |
| 4/26/2018 | ($16,058.00) | 935 |
| 4/30/2018 | ($6,640.00) | 934 |
| 5/7/2018 | ($3,000.00) | 987 |
| 5/9/2018 | ($3,000.00) | 940 |
| 5/25/2018 | ($3,000.00) | 966 |
| 5/30/2018 | ($5,000.00) | 942 |
| 7/12/2018 | ($6,500.00) | 967 |
| 8/6/2018 | ($8,833.00) | 968 |
| 8/6/2018 | ($8,833.00) | 971 |
| 8/6/2018 | ($8,312.00) | 950 |
| 8/8/2018 | ($3,000.00) | 916 |
| 8/14/2018 | ($5,000.00) | 920 |
| 8/24/2018 | ($10,000.00) | 973 |
| 8/30/2018 | ($3,000.00) | 730 |
| 8/31/2018 | ($9,892.00) | 877 |
| 9/17/2018 | ($3,000.00) | 709 |

| | | |
|---|---|---|
| 9/25/2018 | ($3,000.00) | 711 |
| 9/28/2018 | ($10,000.00) | 505 |
| 10/9/2018 | ($5,000.00) | 501 |
| 10/24/2018 | ($3,000.00) | 996 |
| 10/25/2018 | ($3,000.00) | 925 |
| 10/30/2018 | ($3,000.00) | 997 |
| 11/6/2018 | ($3,000.00) | 503 |
| 11/15/2018 | ($3,000.00) | 768 |
| 4/12/2019 | ($3,000.00) | 1059 |
| 4/19/2019 | ($3,000.00) | 1061 |
| 5/20/2019 | ($3,000.00) | 510 |
| 7/30/2019 | ($5,000.00) | 517 |
| 8/2/2019 | ($10,000.00) | 1089 |
| 9/13/2019 | ($5,000.00) | 1164 |
| 10/7/2019 | ($5,000.00) | 1122 |
| **TOTAL** | **($453,040.96)** | |

56.     From the years 2014 through 2019 Salha regularly used the Amex card for her personal benefit while telling Mr. Shaalan that the money was being used for his benefit.

57.     Salha paid the Amex card from Mr. Shaalan's checking account by either illegally accessing it online or conducting transfers at the Branch.

58.     Salha arranged for the following fraudulent payments toward the Amex card used for her personal benefit for a total of $127,801.49.

| Date | Amount |
|---|---|
| 10/30/2014 | ($1,059.11) |
| 11/28/2014 | ($1,130.39) |
| 1/26/2015 | ($2,358.87) |
| 2/17/2015 | ($1,130.19) |
| 3/25/2015 | ($2,770.19) |
| 4/24/2015 | ($8,170.58) |
| 6/8/2015 | ($2,646.01) |
| 6/22/2015 | ($2,653.74) |
| 8/24/2015 | ($3,191.03) |
| 9/25/2015 | ($3,040.56) |
| 10/27/2015 | ($775.44) |
| 12/7/2015 | ($721.57) |
| 12/28/2015 | ($2,163.65) |
| 2/12/2016 | ($9,014.86) |

9

| Date | Amount |
|---|---|
| 3/7/2016 | ($13,532.53) |
| 3/25/2016 | ($566.93) |
| 5/13/2016 | ($1,721.64) |
| 5/23/2016 | ($11,390.54) |
| 6/30/2016 | ($1,780.28) |
| 8/29/2016 | ($14,288.96) |
| 12/8/2016 | ($12,168.24) |
| 1/30/2017 | ($3,475.37) |
| 3/24/2017 | ($2,747.62) |
| 5/4/2017 | ($3,202.05) |
| 5/30/2017 | ($1,110.34) |
| 6/26/2017 | ($561.36) |
| 8/3/2017 | ($1,515.07) |
| 8/29/2017 | ($2,543.00) |
| 10/27/2017 | ($4,072.27) |
| 12/22/2017 | ($397.87) |
| 2/27/2018 | ($2,943.49) |
| 4/5/2018 | ($380.60) |
| 5/18/2018 | ($2,066.60) |
| 8/8/2018 | ($207.82) |
| 11/14/2018 | ($5,962.00) |
| 2/6/2019 | ($109.66) |
| 5/10/2019 | ($109.66) |
| 10/24/2019 | ($121.40) |
| **TOTAL** | **($127,801.49)** |

59.     Salha routinely transferred money from Mr. Shaalan's savings account to Mr. Shaalan's checking account by either illegally accessing it online or conducting transfers at the Branch.

60.     Beginning in 2015, Salha aided Mohamed Shaalan, Mr. Shaalan's half-Nephew, (hereinafter "Nephew") in transferring money via wire transfer from Mr. Shaalan's savings account to Nephew.

61.     Salha was aware Mr. Shaalan and Nephew did not have a friendly relationship. It is understood that Salha aided Nephew in order to mask her ongoing fraud.

62. These wire transfers were obtained at the Branch under the supervision of Capital One employees.

63. Salha arranged for the following fraudulent wire transfers (and $40.00 fees) for the benefit of Mohamed Shaalan in order to mask Salha's fraud for a total of $371,035.00:

| Date | Amount |
| --- | --- |
| 5/3/2016 | ($100,030.00) |
| 5/3/2016 | ($40.00) |
| 6/13/2016 | ($50,030.00) |
| 6/13/2016 | ($40.00) |
| 8/3/2016 | ($2,015.00) |
| 8/3/2016 | ($40.00) |
| 8/11/2016 | ($50,000.00) |
| 8/11/2016 | ($40.00) |
| 12/30/2016 | ($50,030.00) |
| 12/30/2016 | ($40.00) |
| 6/2/2017 | ($27,000.00) |
| 6/2/2017 | ($40.00) |
| 6/7/2017 | ($50,000.00) |
| 6/7/2017 | ($40.00) |
| 6/30/2017 | ($3,500.00) |
| 6/30/2017 | ($40.00) |
| 2/6/2018 | ($35,030.00) |
| 2/6/2018 | ($40.00) |
| 2/26/2018 | ($3,000.00) |
| 2/26/2018 | ($40.00) |
| **TOTAL** | **($371,035.00)** |

64. Mr. Shaalan's condition continued to rapidly deteriorate while on the mind-altering medications. In 2020, Mr. Shaalan was discovered lost and disoriented on the streets of D.C.

65. Salha's abuse of Mr. Shaalan's account waned between 2017 and 2019 and, to Mr. Shaalan's knowledge, stopped entirely in 2019.

66. When Mr. Shaalan was weaned from the mind-altering medications in 2020, he was in a better cognitive condition. Mr. Shaalan suffered from hearing loss and is blind in one eye.

67. It was not until November 2019 that Mr. Shaalan had any concept of the $1 million wire transfer, $1 million cash withdrawal, unauthorized use of the AMEX card, Salha's predatory checks, Nephew's wire transfers, and Capital One's complicity.

68. Salha's taking advantage, as a trusted assistant, of Mr. Shaalan, an elderly man, who was impaired by medication, showed evil motive or intent, was outrageous, and grossly fraudulent.

69. Capital One's actions show willful disregard for Mr. Shaalan were outrageous and reckless toward Mr. Shaalan.

## COUNT I – SURVIVAL ACTION, FRAUD (Hala Salha)

70. Mr. Shaalan restates and realleges the allegations in paragraphs 1 through 69 above, as if fully set forth herein.

71. This is a survival action under D.C. Code § 12-101 for fraud belonging to Mr. Shaalan before his passing.

72. Approximately $2,951,877.45 was stolen from Mr. Shaalan by fraudulent means (hereinafter "funds"), representing:

   a. $1,000,000.00 wire transfer in November 2014.

   b. $1,000,000.00 cash withdrawal in January 2015.

   c. $453,040.96 through fraudulently obtained checks.

   d. $127,801.49 through fraudulent charges from the Amex card.

   e. $371,035.00 for fraudulently obtained wire transfers and fees.

73. Between 2014 and 2019 Salha continuously represented to Mr. Shaalan that the checks, withdrawals, and transferred funds were used for Mr. Shaalan's benefit.

74. Salha never intended to use the funds for Mr. Shaalan's benefit and never intended to disclose this fact to Mr. Shaalan.

75. Upon information and belief, Salha expected Mr. Shaalan to die and for her fraud to be left unaddressed.

76. Mr. Shaalan was deceived by Salha's representations and as a result he continued to allow her to act as his trusted personal assistant helping him with both his business and personal affairs.

77. Mr. Shaalan was deceived by Salha and as a result he continued to allow her to act as his trusted personal assistant helping him with both his business and personal affairs.

78. As a result of Salha's misrepresentations, $2,951,877.45 has been unlawfully taken from Plaintiff.

79. Salha's actions warrant punitive damages of $4,000,000.00.

## COUNT II – SURVIVAL ACTION, AIDING AND ABETTING FRAUD,

### (Capital One)

80. Plaintiff restates and realleges the allegations in paragraphs 1 through 79 above, as if fully set forth herein.

81. This is a survival action under D.C. Code § 12-101 for aiding and abetting fraud belonging to Mr. Shaalan before his passing.

82. Salha committed the fraud as outlined herein.

83. Capital One knew it was in a trusted position regarding Mr. Shaalan's bank accounts.

84. Capital One knew Salha was engaging in fraud, as early as the November 2014 wire transfer.

85. Capital One did nothing to prevent the fraud.

86. Capital One acted in furtherance of the fraud by authorizing numerous bank activities on Mr. Shaalan's accounts.

87. Capital One agents acted directly in furtherance of the fraud every time Salha came to the branch with Mr. Shaalan to perform a transaction.

88. Mr. Shaalan suffered damages in the amount of $2,951,877.45.

89. Capital One's actions warrant punitive damages of $4,000,000.00.

## COUNT II – SURVIVAL ACTION CONSPIRACY TO COMMIT FRAUD,

### (Salha and Capital One)

### Plead in the alternative as to Capital One

90. Plaintiff restates and realleges the allegations in paragraphs 1 through 89 above, as if fully set forth herein.

91. This is a survival action under D.C. Code § 12-101 for conspiracy to commit fraud belonging to Mr. Shaalan before his passing.

92. Agents of Capital One and Salha had an agreement to work together to defraud Mr. Shaalan.

93. Capital One honored checks, gave access to Mr. Shaalan's accounts, and processed wire transactions all in furtherance of the fraudulent scheme.

94. Mr. Shaalan suffered damages in the amount of $2,951,877.45 as a result.

95. Capital One's actions warrant punitive damages of $4,000,000.00.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against each of the Defendants and prays that this Court:

1) Award damages in an amount to be proven at trial of $2,951,877.45;

2) Award punitive damages of $4,000,000.00;

3) Award the costs of this action and reasonable attorneys' fees and expenses;

4) Award pre-judgment and post-judgment interest;

5) Grant such other and further relief as the Court should deem just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues for which a trial by jury may be had.

Dated: October 29, 2021

Respectfully submitted,
YASMINE MELEHY, personal representative for the Estate of ABDEL SHAKOUR SHAALAN
By Counsel

/s/
Milton C. Johns, VA Bar No. 42305
D.D.C. Attorney Number VA072
Executive Law Partners, PLLC
11130 Fairfax Boulevard, Suite 303
Fairfax, Virginia 22033
mjohns@xlppllc.com
Telephone: (571) 500-1010
Fax: (571) 408-8102
*Counsel for Plaintiff*