**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YASMINE MELEHY, *Personal Representative for the Estate of Abdel Shakour Shaalan*, Plaintiff, v. HALA SALHA, *et al.*, Defendants. | Civil Action No. 21-2873 (ABJ) |

## MEMORANDUM OPINION

On October 29, 2021, plaintiff Yasmine Melehy, in her capacity as Personal Representative for the Estate of Abdel Shakour Shaalan, brought this survival action against defendants Hala Salha and Capital One N.A. ("Capital One"),[1] alleging fraud on the part of defendant Salha (Count I), aiding and abetting fraud on the part of Capital One (Count II), and conspiracy to commit fraud by both defendants (Count III). Compl. [Dkt. # 1] at 12–14.

Defendant Capital One, N.A. moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Def. Capital One's Mot. to Dismiss & Mem. in Supp. of Def. Capital One's Mot. to Dismiss [Dkt. # 8] ("Cap. One's Mot."). Shortly thereafter, defendant Hala Salha also moved to dismiss the complaint pursuant to Rule 12(b)(6). Def. Salha's

---

1       Plaintiff originally sued Capital One Financial Corporation, but the parties filed a joint motion to substitute Capital One Financial Corporation with Capital One, N.A. *See* Joint Mot. to Sub. Party and Extend Time [Dkt. # 6]; Min. Order (Dec. 6, 2021).

Mot. to Dismiss Compl. & Mem. of Law in Supp. of Def. Salha's Mot. to Dismiss Compl. [Dkt. # 11] ("Salha's Mot.").  Both motions are now fully briefed.[2]

For the reasons set forth in more detail below, defendant Capital One's motion to dismiss will be **GRANTED**.  Defendant Salha's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**, and only certain portions of Count I will proceed.

## BACKGROUND

Plaintiff Yasmine Melehy is the Personal Representative of the Estate of Abdel Shakour Shaalan, a former resident of the District of Columbia who passed away on June 4, 2021. Compl. ¶¶ 2–3.  Mr. Shaalan represented the Middle East region on the Executive Board of the International Monetary Fund ("IMF") for 22 years until his retirement in 2014, and he maintained an office at the IMF until February 2020.  Compl. ¶¶ 8–9.  The complaint claims defendant Hala Salha was Mr. Shalaan's personal assistant at the IMF for approximately 30 years, and that Mr. Shaalan became a widower in July 2012 when his wife Saida Shaalan passed away.  Compl. ¶ 10–11.  Plaintiff alleges that after Mrs. Shaalan's passing, Salha became "increasingly involved in Mr. Shaalan's personal affairs," choosing doctors to care for Mr. Shaalan, encouraging those doctors to prescribe medication to Mr. Shaalan on multiple occasions, and handling his finances. Compl. ¶¶ 12, 15, 18–19, 22.  Plaintiff claims that the prescription medications requested by Salha impaired Mr. Shaalan's judgment, but that from 2012 to 2014, Salha "masked Mr. Shaalan's condition from the public."  Compl. ¶¶ 18, 20.  Plaintiff also asserts that Mr. Shaalan's "cognitive abilities improved" after he stopped taking the medication in 2020.  Compl. ¶ 21.

---

2      *See* Pl.'s Opp. to Cap. One's Mot. [Dkt. # 12] ("Opp. to Cap. One's Mot."); Pl.'s Opp. to Salha's Mot. [Dkt. # 14] ("Opp. to Salha's Mot.); Reply Mem. in Supp. of Cap. One's Mot. [Dkt. # 17] ("Cap. One's Reply"); Reply in Supp. of Salha's Mot. [Dkt. # 16] ("Salha's Reply").

The complaint states that Mr. Shaalan had a high-yield checking account and a savings account with Capital One and routinely conducted banking transactions in person at the Capital One branch located at 1700 K Street NW.  Compl. ¶¶ 13–14.  It alleges that Mr. Shaalan had an American Express ("Amex") card but had a "longstanding habit of making all payments via cash or check."  Compl. ¶¶ 23–24.

**The Transactions**

Plaintiff alleges that Salha took increasing advantage of Mr. Shaalan's impaired mental condition by conducting financial transactions with Mr. Shaalan's money that were for her personal financial benefit, without his knowledge or permission.  *See* Compl. ¶¶ 25–65.

First, plaintiff claims that "[a]t some point in 2014 Salha realized that no one was monitoring the Amex transactions and started using the Amex for her personal benefit."  Compl. ¶ 27.  The complaint alleges that from 2014 through 2019, Salha "regularly used" Mr. Shaalan's Amex card "for her personal benefit while telling Mr. Shaalan that the money was being used for his benefit."  Compl. ¶ 56.  Salha then paid off the Amex card charges with funds from Mr. Shaalan's Capital One checking account and "routinely" transferred money from his savings account to his checking account "by either illegally accessing [the accounts] online or conducting transfers at the [Capital One] Branch."  Compl. ¶¶ 57, 59.  The complaint lists thirty-eight payments made to the Amex card that were allegedly for Salha's personal benefit, totaling $127,801.49.  Compl. ¶ 58.

Second, the complaint alleges that Salha brought Mr. Shaalan to the Capital One branch on November 3, 2014 and, "[w]ith the assistance of Capital One personnel," had $1 million wired from his savings account to "an account in Salha's name."  Compl. ¶¶ 31–33.  Plaintiff alleges that at the time of this transaction, Mr. Shaalan was "incapable of understanding what was occurring

or [] consent[ing] to it" and that he was under the influence of "mind-altering medications." Compl. ¶¶ 34, 39. The complaint claims that "Salha told Mr. Shaalan that the wire transfer was for [his] benefit or for his family," but that the money was not used for that purpose. Compl. ¶¶ 38, 41. Plaintiff further claims that this "type of wire transfer had numerous indicators of fraud, the most severe of which was Salha herself handling the paperwork," and that in assisting with the transaction, "[o]ne or more employees at Capital One chose to ignore Capital One safeguards in order to benefit Salha." Compl. ¶¶ 36–37.

Third, plaintiff claims that Salha brought Mr. Shaalan to the Capital One branch on January 16, 2015 to withdraw another $1 million in cash from his savings account "for Salha's benefit." Compl. ¶ 42. The complaint alleges that Mr. Shaalan "continued to be under the influence of mind-altering medications" at the time of this transaction, and that Salha again told Mr. Shaalan that the money would be used for his benefit, but it was not. Compl. ¶¶ 43, 46. Plaintiff asserts that Salha "had to make prior arrangements with staff at the branch before withdrawing such a large sum of money," and that the branch employees aided in the withdrawal. Compl. ¶¶ 44–45.[3]

Fourth, plaintiff alleges that Salha "regularly" wrote checks to herself and unidentified third parties using Mr. Shaalan's checkbook and "instructed Mr. Shaalan to sign them." Compl. ¶ 50. She also signed his name to some checks herself and "utilized pre-signed checks" from "2014 through 2019." Compl. ¶¶ 49–51. She allegedly told Mr. Shaalan that these checks would be used for his benefit and cashed the checks at the Capital One branch with the assistance of branch employees. Compl. ¶¶ 50, 52. Plaintiff alleges that branch employees cashed some checks

---

3      Plaintiff also claims that on an unspecified date in January 2015, Salha "had Mr. Shaalan transfer $1 million to a separate account in Mr. Shaalan's name," but the transaction was reversed for unknown reasons. Compl. ¶¶ 47–48.

although parts of the check were left blank, and that they used "used withdrawal slips in amounts not reflected on checks in order to mask withdrawals." Compl. ¶¶ 53–54. The complaint lists the number, amount, and date of ninety-six checks totaling $453,040.96 that Salha allegedly had Mr. Shaalan sign and which were drawn from Mr. Shaalan's checking account between 2014 and 2019. Compl. ¶ 55.

Finally, plaintiff alleges that beginning in 2015, Salha began wiring money to Mr. Shaalan's half-nephew, Mohamed Shaalan, "in order to mask her ongoing fraud." Compl. ¶¶ 60–61. The complaint states that Salha was aware that Mr. Shaalan did not have a "friendly relationship" with this nephew. Compl. ¶ 61. The complaint lists ten wire transfers and accompanying fees, totaling $371,035, that were obtained at the Capital One branch "under the supervision of Capital One employees" and were "for the benefit of" Mr. Shaalan's nephew Mohamed. Compl. ¶¶ 62–63.

Plaintiff alleges that "[i]t was not until November 2019 that Mr. Shaalan had any concept of" these transactions, and that Salha's "abuse" of Mr. Shaalan's account "stopped entirely" in 2019. Compl. ¶¶ 65, 67. The complaint also recounts that in 2020, Mr. Shaalan was found "lost and disoriented on the streets of D.C." due to the effects of his prescription medications but that, at another point in the same year, he was "weaned" from these medications and his cognitive condition improved. Compl. ¶¶ 64, 66. At that point in 2020, Mr. Shaalan was an "elderly man" who "suffered from hearing loss and [was] blind in one eye." Compl. ¶¶ 66, 68. Mr. Shaalan passed away on June 4, 2021. Compl. ¶ 2.

**The Complaint**

The complaint consists of three counts. Count I alleges that defendant Salha obtained approximately $2,951,877.45 from Mr. Shaalan through fraudulent means by "continuously

representing to Mr. Shaalan that the checks, withdrawals, and transferred funds were used for Mr. Shaalan's benefit" despite never intending to use the funds for his benefit or disclosing this fact to him.  Compl. ¶¶ 73–74.  It further alleges that Mr. Shaalan was deceived by these representations and therefore "continued to allow her to act as his trusted personal assistant helping him with both his business and personal affairs."  Compl. ¶ 76.

Count II alleges that defendant Capital One aided and abetted Salha's alleged fraud:  it "knew it was in a trusted position" and "knew Salha was engaged in fraud[] as early as the November 2014 wire transfer," but "did nothing to prevent the fraud" and "acted in furtherance of the fraud by authorizing numerous bank activities on Mr. Shaalan's accounts."  Compl. ¶¶ 81–87.  As plaintiff puts it, the bank furthered the fraud "every time Salha came to the branch with Mr. Shaalan to perform a transaction."  Compl. ¶ 87.

Count III,[4] pled in the alternative to Count II, alleges that Capital One conspired with Salha to perpetrate the fraud.  Compl. ¶ 91.  It alleges that "[a]gents of Capital One and Salha had an agreement to work together to defraud Mr. Shaalan," and that in furtherance of this agreement, Capital One "honored checks, gave access to Mr. Shaalan's accounts, and processed wire transactions" resulting in a loss to Mr. Shaalan of $2,951,877.45.  Compl. ¶¶ 92–94.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the

---

4        The third claim is also labeled Count II, but the Court will assume that this is a typo and refer to it as Count III to avoid confusion.

6

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents

attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.     Fraud claims against Salha in Count I

Under District of Columbia law, "[t]he essential elements of common law fraud are:  (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977).  To successfully plead fraud, a plaintiff must "allege such facts as will reveal the existence of all the requisite elements of fraud." *Id.* at 59–60.  A complaint alleging fraud is also subject to a heightened pleading standard:  Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  This means that the complaint must include facts to specify the "time, place, and content of the fraud and to identify the individuals allegedly involved." *United States ex rel. Shea v. Cellco*, 863 F.3d 923, 936 (D.C. Cir. 2017).  However, the rule allows allegations of "intent, knowledge, and other conditions of a person's mind" to be averred generally.  Fed. R. Civ. P. 9(b).  The heightened pleading standard is designed to "discourage[] the initiation of suits brought solely for their nuisance value, and safeguard[] potential defendants from frivolous accusations of moral turpitude," as well as to "guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

Defendant Salha argues that Count I should be dismissed because it fails to meet the particularity requirement of Rule 9(b) and because it fails to state a claim for which relief can be granted.  Salha's Mot. at 1.  Salha argues that the complaint does not allege fraud with sufficient particularity because it does not include "a single fact alleging that Salha *made any misrepresentations of fact* to Mr. Shaalan," does not "assert where or to whom" the alleged misrepresentation was made, and does not include any facts "demonstrating that the wire transfer or any other actions taken by Salha *were not* 'for Mr. Shaalan's benefit,'" or "how Plaintiff relied on any alleged misrepresentation."  Salha's Mot. at 8–9 (emphasis in original).

The complaint does fail to allege the requisite elements of fraud with respect to two categories of alleged transactions:  the checks and the wire transfers to Mr. Shaalan's nephew.  However, it alleges facts sufficient to satisfy each of the elements of a fraud claim under both Rule 12(b)(6) and Rule 9(b) with respect to the Amex charges, the November 3, 2014 wire transfer, and the January 16, 2015 cash withdrawal.[5]

### A. Amex Use and Capital One Transfers to Pay Amex Bill

---

[5]    Defendant objects to the characterization of these transactions as fraudulent, arguing that plaintiff "never asserts that Salha failed to use the money to benefit Mr. Shaalan."  Salha's Mot. at 8 n.3.  But that is a mischaracterization of the complaint, as plaintiff does allege that the Amex charges paid for with funds from Mr. Shaalan's account were for Salha's personal benefit.  *See, e.g.*, Compl. ¶ 27 ("At some point in 2014 Salha realized that no one was monitoring the Amex transactions and started using the Amex for her personal benefit.").  And though the complaint does not explicitly state that Salha was only authorized to use the card for the benefit of her employer, that is a reasonable inference that can be drawn from the allegations.  *See, e.g.*, Compl. ¶ 25 ("Salha began using the Amex, presumably for the benefit of Mr. Shaalan."); Compl. ¶ 28 ("Mr. Shaalan never gave Salha permission to use the AMEX card for personal use.").  There are similar allegations regarding the November 2014 wire transfer, *see* Compl. ¶ 41 ("The $1 million wired from Mr. Shaalan's savings account was not used to benefit Mr. Shaalan."), and the January 2015 cash withdrawal.  Compl. ¶ 46 ("The $1 million in cash withdrawn from Mr. Shaalan's savings account was not used to benefit Plaintiff.").

Count I alleges that Salha defrauded Mr. Shaalan by "regularly us[ing] the Amex card for her personal benefit while telling Mr. Shaalan that the money was being used for his benefit." Compl. ¶ 56. The complaint states that Salha made this representation with knowledge of its falsity and with the intent to deceive Mr. Shaalan: "Salha never intended to use the funds for Mr. Shaalan's benefit and never intended to disclose this fact to Mr. Shaalan. . . . Salha expected Mr. Shaalan to die and for her fraud to be left unaddressed." Compl. ¶¶ 74–75. And the complaint alleges that Mr. Shaalan relied on this misrepresentation to his detriment by continuing to allow Salha to use the card in this way and "act as his trusted personal assistant helping him with both his business and personal affairs." Compl. ¶ 76.

These claims meet the particularity requirements of Rule 9(b). "Rule 9(b) does not require plaintiffs to allege every instance of fraud when a scheme spans several years." *Williams*, 389 F.3d at 1259. Under those circumstances, a claim is sufficiently pled with respect to time when it alleges a time frame with beginning and end dates. *See, e.g.*, *United States ex rel. Todd Heath v. AT&T*, 791 F.3d 112, 123–124 (D.C. Cir. 2015) (finding a claim sufficiently pled as to time when it alleged the fraud occurred throughout 1997 to 2009). Here, plaintiff alleges that Salha misrepresented the purpose behind her use of the Amex card from 2014 to 2019 and includes dates of payments toward the card. Compl. ¶ 58. The complaint also alleges where the fraudulent transactions took place: either online through Mr. Shaalan's checking account or in person at the Capital One branch on K Street in Washington, D.C. Compl. ¶ 57. *See Todd Heath*, 791 F.3d at 124 (finding place sufficiently pled because the complaint alleged that a years-long fraud occurred "through nineteen subsidiaries and their interactions with E-Rate schools and libraries across the Country."). Finally, it describes the content of the alleged misrepresentation and the individuals involved: that Salha told Mr. Shaalan she was using the Amex card for his benefit. Compl. ¶ 56.

To establish that the representations were untrue, plaintiff may eventually need to go behind the payments from the bank to Amex and provide information about the charges themselves, but accepting the allegations in the complaint as true and resolving all inferences in plaintiff's favor, she has stated a claim that can go forward with respect to the funds used to pay off the Amex charges.

### B.  November 3, 2014 Wire Transfer

As with the Amex transactions, the complaint alleges that "Salha told Mr. Shaalan that the [November 3, 2014] wire transfer was for his benefit or for his family," Compl. ¶ 38, but that it "was not used to benefit Mr. Shaalan."  Compl. ¶ 41.  This misrepresentation – which defendant does not dispute would be about a material fact – is alleged with particularity, identifying the time and place – November 3, 2014 at the K Street branch – and the content and individuals involved.[6]  Compl. ¶¶ 31, 39.  The complaint alleges that Salha knew her representation was false and made it with the intent to deceive because she "never intended to use the funds for Mr. Shaalan's benefit and never intended to disclose this fact to Mr. Shaalan."  Compl. ¶ 74.  And it alleges that Mr. Shaalan relied on Salha's representation by permitting her to wire the money in his presence and continue to serve in a position of trust.  Compl. ¶¶ 31, 76.

### C.  January 16, 2015 Cash Withdrawal

---

6      Defendant Salha argues that plaintiff "does not assert where or to whom (other than Mr. Shaalan, who is deceased and therefore could not have provided the information in the Complaint) this statement was made, nor does she contend that this statement was fraudulent.  In fact, absent from the Complaint are any *facts* demonstrating that the wire transfer or any other actions taken by Salha *were not* for Mr. Shaalan's benefit."  Salha's Mot. at 10 (emphasis in original).  But at this point, the only question is whether plaintiff has alleged fraud, and whether she has done so with sufficient particularity, not whether she is going to be able to prove it.

The complaint claims that Salha took Mr. Shaalan to the K Street branch on January 16, 2015 to make a $1 million cash withdrawal and "told [Mr. Shaalan] the money would be used for his benefit," Compl. ¶¶ 42–43, but it was not.  Compl. ¶ 46.  This portion of Count I alleges a material misrepresentation – how the money would be used – with particularity, identifying the time, place, content, and individuals involved.  The complaint alleges that Salha intentionally deceived her employer with this representation because she never intended to use the money for his benefit.  Compl. ¶ 74.  And it alleges that he acted in reliance on her representation by allowing her to withdraw the money and continue in a position of trust.  Compl. ¶¶ 42, 76.

Because the complaint alleges each of the elements of fraud with particularity with respect to the use of the Amex card between 2014 and 2019, the November 2014 wire transfer, and the January 2015 cash withdrawal, defendant Salha's motion to dismiss will be **DENIED** as to these portions of Count I.

### D.  Checks

The allegations in the complaint regarding the checks that Salha urged Mr. Shaalan to sign or signed herself do not state a claim for fraud, and critical information is missing.  The complaint states that:

> From the years 2014 through 2019 Salha regularly wrote checks using Mr. Shaalan's checkbook to herself and instructed Mr. Shaalan to sign them. Salha appears to have signed Mr. Shaalan's name to some checks.  Salha also appears to have utilized pre-signed checks.  Salha told Mr. Shaalan the cash would be used for his benefit.  Each check was drawn at the Branch.

Compl. ¶ 50.  The complaint further alleges that from 2014 through 2019, Salha "regularly wrote checks to third parties" and instructed Mr. Shaalan to sign them and that the money would be used for his benefit, Compl. ¶ 51, but it fails to allege that this representation was false.  The next paragraph adds that checks payable to Salha herself were also drawn on the account.  Compl. ¶ 52.

Though the complaint contains a chart that identifies the challenged checks by date, amount, and check number, it provides no information about the payee or payees, and the conclusory label that these were "fraudulent checks" does not suffice for purposes of Rule 12(b)(6) or 9(b). *See generally* Compl. ¶¶ 50–55. Because the complaint does not allege a false representation with regard to any of these checks – let alone all of them – the motion to dismiss will be **GRANTED** with regard to this portion of Count I.

### E. Wire Transfers to Nephew

Finally, plaintiff alleges that Salha began "aid[ing] Mohamed Shaalan, Mr. Shaalan's half-Nephew . . . in transferring money via wire transfer from Mr. Shaalan's savings account to Nephew." Compl. ¶ 60. Although the complaint states that "Salha was aware Mr. Shaalan and Nephew did not have a friendly relationship," and it posits that "[i]t is understood that Salha aided Nephew in order to mask her ongoing fraud," Compl. ¶ 61, it does not allege that Salha made any representations regarding these transfers to Mr. Shaalan, let alone any false representations. Therefore, the motion to dismiss will also be **GRANTED** with regard to this portion of Count I.

## II.   Count II – Aiding and Abetting Fraud by Capitol One

Aiding and abetting has not yet been recognized as a separate tort in Washington, D.C. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711 (D.C. 2013), citing *Flax v. Schertler*, 935 A.2d 1091, 1107 (D.C. 2007). However, the D.C. Court of Appeals has been equally clear that the tort is not foreclosed – it has simply not yet stated whether the tort is a valid cause of action, and the issue remains unsettled.

In *Flax v. Schertler*, the D.C. Court of Appeals considered a legal malpractice case in which the plaintiff argued that her attorneys should have brought an aiding-and-abetting tort claim on her behalf. 935 A.2d at 1108. The D.C. Court of Appeals held that the attorneys were not liable

because "[t]he uncertainty, at the time of the underlying litigation, about whether this court would recognize the aiding-and-abetting . . . claim . . . undermines any claim that the Lawyers were negligent in failing to bring such a claim.  An attorney is not liable for an error of judgment regarding an unsettled proposition of law."  *Id.* at 1107–08 (internal quotation marks and citation omitted).  The D.C. Court of Appeals again declined to "decide . . . whether [the] cause of action exists" in 2013.  *See Pietrangelo*, 68 A.3d at 711.

In the absence of a decision one way or the other by the D.C. Court of Appeals – and notwithstanding the lack of enthusiasm that may be indicated by the court's failure to recognize the tort over the last four decades – this Court joins other courts in the district in deciding that it is bound by the D.C. Circuit's decision in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983),[7] to acknowledge the potential availability of the tort:  "[t]he separate tort of aiding-abetting has not yet, to our knowledge, been recognized explicitly in the District, but the existence of the civil conspiracy action suggests a high probability that the legal rationale underlying aiding-abetting would also be accepted."  *Id.* at 479; *see also Baker v. Gurfein*, 744 F. Supp. 2d 311, 316 n.3 (D.D.C. 2010) (concluding that *Halberstam* is binding on courts in this district while "the status of the aiding and abetting theory of liability remains unsettled" by the D.C. Court of Appeals);

---

7    *See Jones-Hamilton Co. v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (concluding that a prior panel's "interpretation of California law is binding in the absence of any subsequent indication from the California courts that [the Circuit court's] interpretation was incorrect") (internal quotation marks omitted); *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1451 (11th Cir. 1991) (concluding that prior panel decision regarding interpretation of Georgia law is binding until "an intervening Georgia case has specifically contradicted" it); *Derflinger v. Ford Motor Co.*, 866 F.2d 107, 110 (4th Cir. 1989) ("[A] prior panel decision should be followed by other panels with regard to any alleged existing confusion in state law, absent a subsequent state court decision or statutory amendment which makes [the Circuit court's prior] decision clearly wrong.") (internal quotation marks omitted).

*EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 87–88 (D.D.C. 2017) (same).[8]

To meet the pleading requirements of an aiding and abetting claim sounding in fraud, plaintiff must allege with particularity that (1) a third party whom the defendant aided committed fraud; (2) the defendant knew that the third party was defrauding plaintiff; and (3) the defendant gave substantial assistance to the third party in defrauding plaintiff. *See Halberstam*, 705 F.2d at 477; *see also EIG Energy*, 246 F. Supp. 3d at 88.

The Court has already found that plaintiff has stated a claim that defendant Salha committed fraud with respect to the Amex transactions, the November 3, 2014 wire transfer, and the January 16, 2015 cash withdrawal. But plaintiff has not pled facts sufficient to support the inference that the bank knew that Salha was defrauding Mr. Shaalan through those transactions.

Plaintiff summarily states that defendant Capital One "knew Salha was engaging in fraud, as early as the November 2014 wire transfer." Compl. ¶ 84. Plaintiff adds that the bank ignored

---

[8]    Other courts in this district have concluded that *Flax* foreclosed the aiding-and-abetting cause of action. *See Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 356 (D.D.C. 2015) ("Because the D.C. Court of Appeals has not recognized a claim for aiding and abetting a tort, this claim fails."), citing *Flax*, 935 A.2d at 1107 n.15; *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 119 (D.D.C. 2012) ("According to the District of Columbia Court of Appeals, to which this Court looks on issues of District of Columbia law, the tort of aiding and abetting is not recognized under District law."), citing *Flax*, 935 A.2d at 1107 n.15. But the footnote cited by those courts does not, in this Court's view, foreclose the possibility; the footnote said that "[a]lthough the *Halberstam* court predicted that this court would recognize a tort of aiding and abetting tortious conduct, *we have not done so to date*, and we are not bound by that court's ruling." *Flax*, 935 A.2d at 1107 n.15 (emphasis added), referencing *Halberstam*, 705 F.2d at 479. This is consistent with the statements elsewhere in the *Flax* opinion recognizing the "uncertainty" surrounding whether the tort would be recognized at some point, and the fact that after *Flax,* the D.C. Court of Appeals again pointedly declined to decide whether a tort-based aiding-and-abetting cause of action exists in the District of Columbia in 2013. *Pietrangelo*, 68 A.3d at 711. Therefore, in an abundance of caution, the Court finds *Baker* and *EIG Energy Fund* to be instructive, and it will assess the allegations in Count II in light of what the elements of such a tort would be, rather than dismiss the count on the basis that there is no such tort as a matter of law.

"numerous indicators of fraud" that characterized the November wire transfer. Compl. ¶ 36. But the only "indicator" identified in the complaint is that Salha handled the paperwork for the wire transfer herself. Compl. ¶ 36. It is not clear from the complaint why the bank should have found that to be remarkable given the allegations that Salha "assisted with Mr. Shaalan's business affairs" for thirty years, Compl. ¶ 10, *see also* Compl. ¶ 22 (Salha had been "handling Mr. Shaalan's finances" prior to "late 2014" when the wire transfer was initiated), and that she was "increasingly involved in Mr. Shaalan's personal affairs" after the death of his wife. Compl. ¶ 12. Moreover, plaintiff asserts that Mr. Shaalan was physically present at the bank on the date of the wire transfer, Compl. ¶ 31, and that wire transfers to people with close relationships to an accountholder are "routine." Compl. ¶ 35. Plaintiff alleges that "[o]ne or more employees at Capital One chose to ignore Capital One safeguards in order to benefit Salha," Compl. ¶ 37, but she fails to support this conclusory assertion by pointing to any particular safeguards that were overlooked.[9] In sum, while plaintiff parrots the sort of language that tends to appear in negligence or breach of fiduciary duty claims, she chose to assert that the bank was aiding and abetting fraud, and the complaint lacks sufficient facts to support a plausible inference that the bank had the requisite level of knowledge. *See Atchley v. Astrazeneca UK Ltd.*, 22 F.4th 204, 220–21 (D.C. Cir. 2022) (plaintiffs must set forth "allegations of the facts or events they claim give rise to an inference" that the defendant acted with the requisite mental state).

---

[9] The complaint is also devoid of allegations concerning the bank's knowledge with regard to the January 16, 2015 withdrawal; the complaint merely states that "Salha had to make prior arrangements with staff at the branch before withdrawing such a large sum of money," but includes no support for an inference that making "prior arrangements" placed the bank on notice of the allegedly fraudulent nature of the withdrawal. Compl. ¶ 44. And plaintiff does not appear to allege that the bank was involved in any of the activity surrounding Salha's use of the Amex card. *See generally* Compl. ¶¶ 25–29.

Because Count II does not state a claim, Capital One's motion to dismiss this count will be **GRANTED**.

### III.    Conspiracy to Commit Fraud

The elements of a conspiracy are:  "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme."  *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).  While it is not necessary to allege facts against an alleged conspirator that satisfy all of the elements of fraud, a complaint alleging a civil conspiracy "must allege the formation and operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result."  *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C. 1984).  To support a claim of conspiracy, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made," and "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Twombly*, 550 U.S. at 556–57.

Both defendants argue that Count III should be dismissed because plaintiff has not alleged any facts demonstrating that Salha and the bank had an agreement.  *See* Cap. One's Mot. at 16; Salha's Mot. at 11.  The complaint states:  "[a]gents of Capital One and Salha had an agreement to work together to defraud Mr. Shaalan."  Compl. ¶ 92.  But the Court agrees that the allegations of conspiracy are entirely conclusory and lack the requisite factual support.  As noted above, the allegations do not support an inference that the bank was on notice of Salha's alleged fraud, and there is even less to suggest the existence of the necessary agreement between the parties.  Nor does Count III include any facts regarding the formation or duration of the conspiracy.

Since the complaint offers precisely the sort of conclusory recitation of an element of an offense that the Supreme Court considered and rejected in *Twombly*, defendants' motion to dismiss this count will be **GRANTED**.

## CONCLUSION

For all of the foregoing reasons, defendant Capital One's motion to dismiss will be **GRANTED** as to Count II and Count III.   Defendant Salha's motion to dismiss will be **GRANTED** as to Count III and as to the part of Count I related to fraudulent checks and a wire transfer to the deceased's nephew, but otherwise **DENIED**.   All dismissed claims are dismissed without prejudice.   *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (finding a court should dismiss with prejudice only if it determines that a plaintiff "could not possibly cure the deficiency" by alleging new or additional facts.) (internal quotation marks omitted).

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 17, 2022